IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CHRISTINE G. GABALI, individually and on behalf of all others similarly situated,<br><br>       Plaintiff(s),<br>   v.<br><br>ONEWEST BANK, FSB,<br><br>       Defendant(s). | CASE NO. 5:12-cv-02901 EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>[Docket Item No(s). 12] |

Presently before the court is Defendant OneWest Bank, FSB's ("Defendant") Motion to Dismiss the First Amended Class Action Complaint ("FAC") filed by Plaintiff Christine G. Gabali. See Docket Item No. 12. Plaintiff has filed written opposition to the motion. See Docket Item No. 18. Having carefully reviewed the relevant documents,[1] the court has determined that Defendant's motion should be denied for the reasons stated below.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On August 11, 2006, Plaintiff purchased real property located in Palo Alto, California with a loan from Glenbrook Enterprises dba Absolute Mortgage. See FAC, Docket Item No. 1, at ¶ 36; see

---

[1] The parties' RJNs are granted to the extent referenced in this Order. Fed. R. Evid. 201(b)(2); Hite v. Wachovia Mortg., No. 2:09-cv-02884-GEB-GGH, 2010 U.S. Dist. LEXIS 57732, at *6-9 (E.D. Cal. June 10, 2010); Gens v. Wachovia Mortg. Corp., No. CV10-01073 JF (HRL), 2010 U.S. Dist. LEXIS 54932, at *6-7, 2010 WL 1924777 (N.D. Cal. May 12, 2010).

1
Case No. 5:12-cv-02901 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

also Def.'s Req. For Judicial Notice ("RJN"), Docket Item No. 13, at Ex. 1.[1] IndyMac Bank ("IndyMac") was the servicer for Plaintiff's loan. Id. at ¶ 37. However, the Promissory Note ("Note") was eventually purchased by Defendant after IndyMac Bank's failure. Id. at ¶ 37.

In 2009, Plaintiff began to experience financial difficulties due to a number of circumstances, including a reduction in salary and an expected increase in her mortgage payments from $3,845.68 to $6,900.00 per month. Id. at ¶ 39. Plaintiff contacted Defendant in an effort to obtain a loan modification and submitted a modification through a non-profit agency. Id. at ¶ 40. IndyMac responded to Plaintiff's application with a denial of her modification request. Id. at ¶ 41. In a letter dated April 10, 2009 (the "April letter"), IndyMac wrote:

> We do not have a Modification program available for you at this time due to the fact that you have been able to continue making your mortgage payments[.] IndyMac encourages you to continue to make your mortgage payments timely to avoid additional fees and possible negative credit reporting.

Id. at ¶ 41, Ex. A.

Plaintiff alleges that, according to her mortgage counselor with the non-profit that assisted her, Defendant indicated that it either never reviewed her loan or did not receive any documents from Plaintiff. Id. at ¶ 42.

After receiving the April letter, Plaintiff contacted Defendant by telephone but was told that Defendant could not assist her since she was not in default on her mortgage payments. Id. at ¶ 43. Plaintiff alleges that one representative told her that "only if she falls behind in her mortgage payments would [Defendant] be able to review and address her case." Id.

Plaintiff alleges that, in or about September, 2009, she began to miss her mortgage payments in "relying on [Defendant's] representation that a loan modification would be unavailable so long as she was not in default." Id. at ¶ 44. Defendant charged Plaintiff a late fee for each month that she missed her mortgage payment and made adverse credit reports to credit reporting agencies, thereby harming Plaintiff's credit and reducing her ability to refinance with another lender. Id.

Defendant then sent a series of letters to Plaintiff.

On October 5, 2009, Defendant sent a letter to Plaintiff indicating that she had fallen behind on her mortgage payments. The letter also identified several mitigation options: (1) repayment plan, (2) loan modification, (3) pre-foreclosure sale or short-payoff, and (4) deed in lieu of foreclosure. Id. at ¶ 45.

On October 19, 2009, Defendant sent a letter to Plaintiff, this time stating that Defendant had partnered with Hope Now's Project Lifeline to assist homeowners at risk of foreclosure and inviting Plaintiff to contact the program. Id. at ¶ 46.

On October 27, 2009, Defendant a letter to Plaintiff "in response to an inquiry submitted through Hope Now, requesting a modification to the terms of your mortgage serviced by IndyMac mortgage services." Id. at ¶ 47, Ex. B. The letter also stated the following:

> On March 4, 2009 the Department of the Treasury launched the Home Affordable Modification Program (HAMP.) HAMP is designed to help borrowers who are experiencing a financial hardship and are seriously delinquent in their mortgage payments. Not all borrowers will meet the eligibility qualifications established by the Department of Treasury; therefore, not all borrowers will be eligible for a HAMP loan modification.

Id.

On November 2, 2009, Defendant sent a letter to Plaintiff indicating that she was in default. Id. at ¶ 48.

Defendant recorded a Notice of Default for Plaintiff's property on December 28, 2009, and a Notice of Trustee's Sale on March 29, 2010. Id. at ¶¶ 48, 49. Plaintiff then received a Forbearance Plan in April, 2010, which required Plaintiff to make installment payments to cure the default. Id. at ¶ 50.

Plaintiff initiated this action against Defendant in Santa Clara County Superior Court on December 6, 2011. She filed the FAC on May 3, 2012, in which she seeks to represent two nationwide classes for violations of California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, False Advertising Law ("FAL"), Business and Professions Code § 17500, and unjust enrichment.

## II.   LEGAL STANDARD

The legal standard governing this motion is well-established and involves three common

3
Case No. 5:12-cv-02901 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

rules of procedure. The first is Federal Rule of Civil Procedure 8(a), which requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Com. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). Rule 8 works in tandem with the next applicable rule, Federal Rule of Civil Procedure 12(b)(6). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

The third relevant rule requires more detailed allegations for causes of action based in fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. Proc. 9(b). These allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations must contain "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007). In other words, claims of fraudulent conduct must generally contain more specific facts than is necessary to support other causes of action.

Mechanically speaking, the court generally "may not consider any material beyond the pleadings" when deciding whether to grant a motion to dismiss. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). The court must generally accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). There are notable exceptions to these guidelines, however. The court may consider material submitted as part of the complaint or relied upon in the complaint, and

may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). In addition, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

### III. DISCUSSION

Defendant makes a number of arguments in support of its Motion to Dismiss. Each are discussed below, albeit in different order than presented in the parties' papers.

#### A. Dismissal for Failure to Plead with Particularly under Rule 9

As a threshold argument applicable to all causes of action, Defendant argues that Plaintiff has not met the heightened pleading standard required by Rule 9(b).

Without doubt, Rule 9(b)'s particularity requirement applies to state-law causes of action which allege fraud or fraudulent conduct. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). It therefore applies to causes of action under the UCL and FAL when they sound in fraud. Cullen v. Netflix, Inc., 880 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012).

Based on the totality of the allegations, the court finds that the Complaint meets Rule 9(b)'s particularity requirement. As stated above, Plaintiff has provided specific allegations concerning Defendant's practices with regard to loan modifications and has attached documentation in support. Plaintiff has also provided specific statements allegedly made by Defendant about her loan, and has attached Defendant's correspondence to her in support. These allegations contain enough of "the who, what, when, where, and how" necessary to place Defendant on notice of Plaintiff's allegations. Vess, 317 F.3d at 1106. The identities of individual representatives who spoke to Plaintiff on behalf of Defendant can be determined in discovery.[2]

The motion to dismiss the Complaint for failure to plead according to Rule 9(b) will be denied.

---

[2] The court must point out that the case relied upon by Defendant for this argument, Rosal v. First Federal Bank of California, 671 F. Supp. 2d 1111 (N.D. Cal. 2009), is distinguishable since the district court relied, at least in part, on Plaintiff's failure to differentiate fraud allegations between many defendants. That type of pleading raises rather obvious notice concerns not at issue in this case with only one defendant.

### B.   Failure to State a Claim under the FAL

The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" in connection with the sale of "real or personal property" or "services."  Cal. Bus. & Prof. Code § 17500.  The statute generally prohibits false statements in advertising.  See Kwikset Corp. v. Super. Ct., 52 Cal. 4th 310, 320 (2011) ("The state's false advertising law . . . is equally comprehensive within the narrower field of false and misleading advertising.").

Defendant argues Plaintiff failed to state a claim for violation of the FAL because (1) she does not have standing, (2) the relevant allegations in the Complaint do not qualify as "advertising" as that term is understood under the statute, and (3) even if Defendant's conduct qualifies as "advertising," it was not false or misleading.

The court has carefully reviewed the entirety of the allegations in the Complaint and has determined that they are sufficiently plead to state claim under the FAL.

#### 1.   "Advertising"

With regard to Defendant's argument concerning what may qualify as "advertising," the court has made certain observations.  First, the FAL can potentially apply to a wide universe of statements.  "California false advertising statutes encompass not just false statements but those statements 'which may be accurate on some level, but will nonetheless tend to mislead or deceive.'" Ariz. Cartridge Remfrs. Ass'n, Inc. v. Lexmark Int'l., Inc., 421 F.3d 981, 985 (9th Cir. 2005) (quoting Day v. AT&T Corp., 63 Cal. App. 4th 325, 332 (1998)).  "'A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under [Section 17500].'" Id. at 332-33.

Second, California courts have construed statements made to individuals about their loans as "advertising" within the meaning of § 17500.  "Whether a loan of money is a sale or a service, the language of section 17500 is sufficiently broad to include false or misleading statements made to the public by banking institutions in connection with their loans." Chern v. Bank of America, 15 Cal. 3d 866, 875-876 (1976).

Third, the scope requirement that Defendant seeks to place on "advertising," that it must be

6
Case No. 5:12-cv-02901 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

"widespread promotional activities directed to the public large" (see Peerless Lighting Corp. v. Am. Motorists, Inc., 82 Cal. App. 4th 995, 1009 (2000)), is far too narrow for § 17500. California courts have utilized this definition, it appears, in addressing insurance coverage disputes involving alleged "advertising injuries." See, e.g., Peerless, 82 Cal. App. 4th at 1008-1009; Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 652-53 (2005); Hameid v. Nat'l Fire. Ins. of Hartford, 31 Cal. 4th 16, 24 (2003); Bank of the West v. Super. Ct., 2 Cal. 4th 1254, 1277 n. 9 (1992). Defendant has not cited, and the court is unable to locate, a California case restricting FAL claims to the "widespread promotional activities" definition.[3]

With these observations in mind, it is apparent that Plaintiff has identified "advertising" in the Complaint. Plaintiff alleges that Defendant's "common business practice is to outright deny loan modification requests without regard to such borrower's hardship," and "commonly send non-delinquent borrowers seeking loan modifications a standard form denial letter indicating that a modification program is not available due to the fact that the borrower is able to make her payments." See FAC, at ¶¶ 14-15. Plaintiff also alleges that when borrowers follow Defendant's direction to contact a customer service representative, they are informed that Defendant is unable to "review and address" the issue unless they fall behind in their mortgage payments. Id. at ¶ 16. Furthermore, Plaintiff alleges that Defendant sent out standard form letters which falsely stated the requirements of HAMP. Id. at ¶¶ 22-23. These representations could each potentially support liability under the FAL, in a manner similar to Chern.[4]

### 2. False or Misleading

Whether advertising is false or misleading under the FAL is determined using a "reasonable consumer" standard. Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). "Under the

---

[3] In that regard, the court finds unpersuasive district court opinions restricting FAL claims to this definition. See Spurlock v. Carrington Mortg. Servs., No. 09CV2273-MMA (JMA), 2010 U.S. Dist. LEXIS 80221, at *18, 2010 WL 3069733 (S.D. Cal. Aug. 4, 2010).

[4] In Chern, the court found held that Defendant's "practice of quoting as a 'per annum' rate interest computed on the basis of a 360-day year is likely to mislead and deceive a bank's potential borrowers, and that if, as alleged, defendant has adopted such practice it constitutes false and misleading advertising under Business and Professions Code section 17500." 15 Cal. 3d at 876. Contrary to what Defendant may argue, the instant allegations are analogous because Plaintiff contends that Defendant engaged in a "common business practice" directed at its borrowers.

United States District Court
For the Northern District of California

1  reasonable consumer standard, [the plaintiff] must show that members of the public are likely to be
2  deceived." Id. (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir. 1995)) (internal quotations
3  omitted). Generally, whether a representation is deceptive is misleading is a question of fact that
4  cannot be determined on a motion to dismiss. Id.

Here, Plaintiff alleges that the statements contained in Defendant's letters as well as the statements made by Defendant's representatives were misleading. In particular, Plaintiff alleges that Defendant mischaracterized both the availability and the requirements of loan modification programs. See FAC, at ¶¶ 14-16, 22-23. Since the allegations are plausible, and since the court does not find this case to be one of those "rare situation[s] in which granting a motion to dismiss is appropriate" on the factual issue of falsity, Plaintiff's allegations are sufficient to at least state a claim under Rule 8.[5] Williams, 552, F.3d at 939.

### 3. Standing

Standing under the FAL, as redefined in 2004 by Proposition 64, "extends to 'any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter.'" Kwikset, 51 Cal. 4th at 321-22 (citing Cal. Bus. & Prof. Code § 17535). "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that [the] economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." Id. at 322.

Defendant focuses on the second Kwikset requirement and argues that Plaintiff has not adequately alleged any causal relationship between the purported misrepresentations and her eventual default. The court disagrees. Here, Plaintiff specifically alleges that she relied on the April 10th letter and statements made by Defendant's representatives when she defaulted on her payments

---

[5] The court rejects Defendant's argument that its allegedly misleading statements are non-actionable, either because they are statements of law or true statements. Nothing about these statements suggests they are merely recitations of the law as opposed to factual statements concerning when Defendant might consider a borrower for a loan modification. See Fletcher v. OneWest Bank, FSB, 798 F. Supp. 2d 925, 934 (N.D. Ill. 2011). In addition, true statements can still be misleading. Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002). On a motion to dismiss, the court cannot construe the allegations in Defendant's favor in the way it requests. See Love, 915 F.2d at 1245.

United States District Court
For the Northern District of California

in September, 2009. See FAC, at ¶ 44. She further alleges that she continued to rely on Defendant's additional misrepresentations, as contained in Defendant's subsequent letters, and did not submit loan payments even after the initial default. Id. at ¶ 47. Based on these allegations, Plaintiff has plead sufficient facts for standing under the FAL.

Accordingly, Defendant's motion to dismiss this cause of action will be denied.

### C.     Failure to State a Claim under the UCL

Under the UCL, there are three varieties of unfair competition: "acts or practices which are unlawful, or unfair, or fraudulent." Khoury v. Maly's of California, Inc., 14 Cal. App. 4th 612, 618-19 (1993). "Unlawful" practices are "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." Saunders v. Super. Ct., 27 Cal. App. 4th 832, 838 (1999). "Unfair" practices constitute "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). The "fraudulent" prong under the UCL requires a showing of actual or potential deception to some members of the public, or harm to the public interest. See id. at 180; see also McKell v. Wash. Mut., Inc., 142 Cal. App. 4th 1457 (2006). The UCL 'borrows' violations of other laws and treats them as unfair business practices, and also "makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." Cal-Tech, 20 Cal. 4th at 180.

Some of Defendant's challenges to Plaintiff's UCL cause of action have been settled by the determinations under the FAL. Plaintiff has standing to assert a cause of action under the UCL for the same reasons she has standing under the FAL since the requirements for standing under both statutory schemes are the same. Morgan v. AT&T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1259 (2009) ("Proposition 64 made identical changes to the standing requirements to bring an action under the FAL as it made to the requirements under the UCL."). Moreover, Plaintiff has stated a claim under the "unlawful" prongs of the UCL to the extent this cause of action relies on the violation of the FAL and the allegations which support it. Williams, 552 F.3d at 938 (explaining that any violation of the FAL "necessarily" violates the UCL).

What remains are two arguments, one under the "unlawful" prong and one under the "unfair" prong of the UCL. As to the "unlawful" prong, the court agrees with Defendant that Plaintiff cannot rely on a violation of the Rosenthal Fair Debt Collections Practices Act ("RFDCPA"), California Civil Code § 1788 *et. seq.* "A loan servicer is not a 'debt collector' for the purposes of California Civil Code § 1788 and collection efforts related to a residential mortgage are not 'debt collection.'" Franczak v. Suntrust Mortg. Inc., No. 5:12-cv-01453 EJD, 2013 U.S. Dist. LEXIS 31138, at *15-16, WL CITE (N.D. Cal. Mar. 6. 2013) (citing Gardner v. Am. Home Mortg. Servicing, Inc., 691 F. Supp. 2d 1192, 1198 (E.D. Cal. 2010); Gamboa v. Trustee Corps., No. 09-0007 SC, 2009 U.S. Dist. LEXIS 19613, at *11, 2009 WL 656285 (N.D. Cal. Mar. 12, 2009)). Plaintiff's theory of material misrepresentations in otherwise ordinary interactions with her mortgage servicer fall far short of what allegedly occurred in Reyes v. Wells Fargo Bank, N.A., No. C-10-01667 JCS, 2011 U.S. Dist. LEXIS 2235, at *61, 2011 WL 30759 (N.D. Cal. Jan. 3. 2011).

On the "unfair" prong, Plaintiff's allegations are sufficient to state a claim. "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefit to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." Tietsworth v. Sears, Roebuck and Co., No. 5:09-CV-00288 JF (HRL), 2009 U.S. Dist. LEXIS 98532, at *23, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) (quoting Daugherty v. Am. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 839 (2006)).[6] Plaintiff has identified the substantial injuries in the form of late fees and expenses, negative actions against

---

[6] As this court observed in another case:

> The definition of an unfair business practice in consumer cases has been unsettled since the California Supreme Court ruling in Cel-Tech, which provided a definition in the context of an antitrust case, but did not address unfairness in the consumer context. . . . In 2006, the appellate court in Camacho v. Automobile Club of Southern California, 142 Cal. App. 4th 1394 (2006), used the Federal Trade Commission Act as guidance for the definition of unfairness. "(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." Id. at 1403. Several appellate courts and district courts have accepted Camacho's test.

In re Apple In-App Purchase Litig., 855 F. Supp. 2d 1030, 1040 n.8 (N.D. Cal. 2012).

1  property, and negative actions against credit. See FAC, at ¶¶ 44, 50. There are no countervailing

2  policies or other consumer benefits which outweigh these injuries. In addition, under the facts as

3  alleged, Plaintiff could not have avoided the injury since there appeared no other way to qualify for a

4  loan modification than to voluntarily default.

5        Accordingly, the cause of action under the UCL will be dismissed only insofar as Plaintiff

6  relies on the RFDCPA for liability under the "unlawful" prong. The dismissal of that portion will be

7  without leave to amend because allowing for amendment under these circumstances would be futile.

8  See Miller v. Rykoff-Sexton, 845 F.2d 209, 214 (9th Cir. 1988). In all other aspects, Defendant's

9  request to dismiss this cause of action will be denied.

10     **D.**    **Failure to State a Claim for Unjust Enrichment**

11       Defendant seeks dismissal of Plaintiff's third cause of action for unjust enrichment because it

12 is not a recognized claim in California. The court agrees. "Courts consistently have held that unjust

13 enrichment is not a proper cause of action under California law." In re Toyota Motor Corp.

14 Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig., 754 F. Supp. 2d 1145, 1194

15 (C.D. Cal. 2010). "Unjust enrichment is a general principle, underlying various legal doctrines and

16 remedies, rather than a remedy itself." Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779,

17 793 (2003). "Simply put, 'there is no cause of action in California for unjust enrichment.'" In re

18 Toyota Motor Corp., 754 F. Supp. 2d at 1194 (citing Melchior, 106 Cal. App. 4th at 793). Since

19 Plaintiff's claim for unjust enrichment cannot state a claim for relief, it will be dismissed without

20 leave to amend.

21     **E.**    **Preemption**

22       Defendant argues that the three causes of action asserted in the FAC are preempted by the

23 Home Owners' Loan Act ("HOLA"). More specifically, Defendant argues that the UCL and FAL

24 causes of action are directly preempted by the "servicing" and "disclosure" sections of § 560.2(b)

25 because Plaintiff's allegations seek to impose requirements on Defendant's lending practices.

26       Federal preemption of state laws stems from the Supremacy Clause of the Constitution.

27 Barrientos v. 1801-1825 Morton, LLC, 583 F.3d 1197, 1208 (9th Cir. 2009). "[T]he laws of the

28 United States . . . shall be the supreme law of the land . . . any Thing in the Constitution or laws of

any state to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

Generally, "[p]reemption analysis 'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" City of Columbus v. Ours Garage & Wrecking Service, Inc., 536 U.S. 424, 438 (2002) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). Congressional intent is therefore the "ultimate touchstone" of preemption inquiry. Medtronic, 518 U.S. at 485. Such intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Fidelity Federal Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152-53 (1982). State law may also be preempted by federal regulations. Id. at 153. "Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily." Id. If these conditions are met, "the statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof." New York v. Fed. Commc'ns Comm'n, 486 U.S. 57, 64 (1988).

There are times when the traditional presumption against preemption does not apply. Indeed, the presumption is "not triggered when the State regulates in an area where there has been a history of significant federal presence." United States v. Locke, 529 U.S. 89, 108 (2000). As relevant here, "Congress has legislated in the field of banking from the days of McCulloch v. Maryland, 17 U.S. 316, 325-26, 426-27, 4 L. Ed. 579 (1819), creating an extensive federal statutory and regulatory scheme." Bank of America v. City & County of San Francisco, 309 F.3d 551, 558 (9th Cir. 2002). HOLA was enacted "to charter savings associations under federal law, at a time when record numbers of home loans were in default and a staggering number of state-chartered savings associations were insolvent." Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008). One of HOLA's central purposes was to restore public confidence in the banking system by consolidating the regulation of savings and loan associations with the federal government. Id. To achieve this purpose, Congress authorized the Office of Thrift Supervision ("OTS") to promulgate regulations governing federal savings associations. 12 U.S.C. § 1464; Silvas, 514 F.3d at 1005. OTS occupies the entire field in that regard. 12 C.F.R. § 560.2(a) (2011).

HOLA's implementing regulations set forth a list, "without limitation," of the categories of state laws that are expressly preempted:

> The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
> ....
> Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
> ....
> Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
> ....
> Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages. . . .

12 C.F.R. § 560.2(b)(4)-(5), (b)(9)-(10) (2011).

Although HOLA and its related regulations have been described as "so pervasive as to leave no room for state regulatory control," state laws may nonetheless survive a preemption claim in limited circumstances. Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1260 (9th Cir. 1979), aff'd, 445 U.S. 921. Those state laws which "only *incidentally* affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of" the regulations may not be preempted. 12 C.F.R. § 560.2(c) (emphasis added). In order to determine whether a particular state law has such an effect, the Ninth Circuit has provided the following process:

> When analyzing the status of state laws under § 560.2, the first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sep. 30, 1996)).

The UCL and FAL are laws of general applicability, but are nonetheless subject to preemption if, as applied, they are the type of state laws contemplated by 12 C.F.R. § 560.2(b). Silvas, 514 F.3d at 1006. With regard to cases challenging a pending or completed foreclosure, this court has previously found claims based on the UCL and FAL preempted by HOLA based on an "as applied" analysis. See, e.g., Joseph v. Wachovia Mortg. Corp., No. 5:11-cv-02395 EJD, 2011 U.S. Dist. LEXIS 133558, at *12-13, 2011 WL 5827224 (N.D. Cal. Nov. 18, 2011) (finding UCL cause of action based on inadequate disclosure of loan terms preempted by HOLA); Unlu v. Wells Fargo Bank, N.A., No. 5:10-cv-5422 EJD, at *16-17, 2011 WL 6141036 (N.D. Cal. Dec. 9, 2011) (finding HOLA preemption when UCL and FAL claims were based on, inter alia, allegations that defendant failed to apprise the availability of a loan modification, wrongfully disqualified Plaintiff from the HAMP program, and failed to provide a means of obtaining information on the specific reasons why plaintiffs could not qualify for HAMP); Garcia v. Wells Fargo Bank, No. 5:12-cv-01670 EJD, 2012 U.S. Dist. LEXIS 92333, at *9-10, 2012 WL 2576206 (N.D. Cal. July 3, 2012); Kim v. Wells Fargo Bank, N.A., No. 5:12-cv-02066 EJD, 2012 U.S. Dist. LEXIS 146590, at *11, 2012 WL 4845614 (N.D. Cal. Oct. 10, 2012) (finding UCL claim based on violations of California Civil Code § 2923.5 preempted by HOLA); Gonzalez v. Wells Fargo Bank, No. 5:12-cv-03842 EJD, 2012 U.S. Dist. LEXIS 154851, at *13-14, 2012 WL 5350035 (N.D. Cal. Oct. 29, 2012) (finding UCL claim preempted when plaintiff alleged she was denied loan modification review).

But not all UCL and FAL claims relating to lending are preempted. See, e.g., Deleon v. Wells Fargo Bank, N.A., No. 10-CV-01390-LHK, 2011 U.S. Dist. LEXIS 8296, at *17-19, 2011 WL 311376 (N.D. Cal. Jan. 28, 2011); Ibarra v. Loan City, No. 09-CV-02228-IEG (POR), 2010 U.S. Dist. LEXIS 6583, at *17-18, 2010 WL 415284 (S.D. Cal. Jan. 27, 2010). This court, as well as others, have noted an important distinction that exists between those cause of action which fail as preempted and those that do not: "alleged misrepresentations concerning 'inadequate disclosures of fees, interest rates, or other loan terms' directly affect lending and are preempted, while allegations which 'rely on the general duty not to misrepresent material facts' are not preempted." Sato v. Wachovia Mortg., FSB, No. 5:11-cv-00810 EJD (PSG), 2011 U.S. Dist. LEXIS 75418, at *21, 2011 WL 2784567 (N.D. Cal. Jul. 13, 2011). As the Seventh Circuit would put it, "it is helpful to ask

14
Case No. 5:12-cv-02901 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

whether the claim 'fall[s] on the regulatory side of the ledger' or 'for want of a better term, . . . the common law side.'  Ayala v. World Sav. Bank, FSB, 616 F. Supp. 2d 1007, 1013 (C.D. Cal. 2009) (quoting In re Ocwen Loan Servicing, LLC, 491 F.3d 638, 645 (7th Cir. 2007)).

In the context of loan modifications, causes of action based on a violation of state lending laws or on failure to authorize a modification are preempted because they would rather obviously implicate the "terms of credit" or "servicing" sections of § 560.2(b).  See Ibarra, 2011 U.S. Dist. LEXIS 8296, at *17; see also Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 417 (N.D. Cal. 2009). Here, Plaintiff's allegations could be read two ways, one which would render them preempted and one which would not.  If the court infers from the allegations that Defendant was required to offer a loan modification or required to make certain disclosures or statements to Plaintiff, then the allegations are preempted because they surely seek to impose an obligation which affects lending. See Ortiz v. Wells Fargo Bank, N.A., No. C 10-4812 RS, 2011 U.S. Dist. LEXIS 58243, at *14-15, WL CITE (N.D. Cal. May 27, 2011) (holding that ostensible UCL claim alleging misrepresentation of availability of loan modification is preempted by HOLA).  However, if the court infers that the allegations only invoke a general duty to not engage in fraud during business dealings, then the claim only incidentally affects lending and is not preempted.  DeLeon, 2011 U.S. Dist LEXIS at *18-19.  At this stage in the case, the court must construe the Complaint in the manner most favorable to Plaintiff.  See Love, 915 F.2d at 1245.  Thus, the court finds that Plaintiff's FAL and UCL causes action - which will be the only causes of action remaining in this action - fall on the "common law side of the ledger" and are not preempted to the extent they rely on general allegations of misrepresentation.  Defendant's motion to dismiss the claims as preempted by HOLA will be denied.

### IV.   ORDER

Based on the foregoing, Defendant's Motion to Dismiss (Docket Item No. 12) is GRANTED IN PART AND DENIED IN PART.  The cause of action under the UCL is DISMISSED WITHOUT LEAVE TO AMEND only the extent it relies on California Civil Code § 1788.13 as a basis of liability.  The cause of action for unjust enrichment is also DISMISSED WITHOUT LEAVE TO AMEND.  The motion to dismiss is DENIED in all other aspects.

The court schedules this action for a Case Management Conference on **May 17, 2013, at 10:00 a.m.**  The parties shall file a Joint Case Management Statement on or before **May 10, 2013.**

**IT IS SO ORDERED.**

Dated: March 29, 2013



    EDWARD J. DAVILA
    United States District Judge

Case No. 5:12-cv-02901 EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS